THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* PAINE DRUG COMPANY, Respondent.

Fourth Department, December 3, 1964.

*John C. Little, Jr., District Attorney (Nicholas P. Varlan* of counsel), for appellant.

*Keenan, Carroll, Harris, Creary & Beck (Robert L. Beck* of counsel), for respondent.

BASTOW, J. The indictment herein charging defendant with the misdemeanor of " Sabbath breaking " in violation of sections 2140, 2141 and 2147 of the Penal Law was dismissed and the People appeal. In accordance with the procedure suggested in *People* v. *Utica Daw's Drug Co.* (16 A D 2d 12) a hearing was held and the determination was based on the proof there presented. The court concluded (39 Misc 2d 824) that the return of the indictment was a discriminatory act that denied defendant equal protection of the law in violation of its constitutional rights. (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11.)

The test to be applied when such a claim is made was long ago stated in *Yick Wo* v. *Hopkins* (118 U. S. 356, 373–374) : " Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered *by public authority* with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." (Emphasis supplied.) We find no such proof in the record before us. Indeed, the proof is to the contrary.

It appears that a group of prominent merchants in Rochester and environs — members of a Retail Merchants' Council — became concerned with the general nonobservance of the Sabbath laws by certain of their competitors. They met with a group of public officials, including the Sheriff and District Attorney of the county. Their requests for prosecution of violators received something less than enthusiastic responses. The then District Attorney stated his doubts as to the enforcibility of the so-called " Sundays laws " because of the numerous inconsistencies therein. But he informed the group and thereafter steadfastly maintained his position that any specific complaints of violations presented to him would be transmitted to police officials for appropriate action.

The group of merchants, having failed to get responsive action from public officials, thereafter with the assistance of certain of their employees made direct purchases on several Sundays in several so-called supermarkets and large drugstores. The individual making the purchases then proceeded before a Magistrate, swore to an information and caused a warrant to be issued. These were served by peace officers.

Significantly, defendant was not one of those from which purchases were so made or against which a prosecution was so instituted. That came about through the implementation of the announced policy of the District Attorney. One of the individuals arrested through the activity of the group of citizens complained to the arresting officer that certain other drugstores were open on Sunday and mentioned defendant by name. When this complaint was relayed to the prosecutor he instructed the officer to investigate and act on the complaint. In the words of the District Attorney the police officer inquired '' What do I do [about the complaint] '' and he was told by the prosecutor: '' If he [the person under arrest] is complaining [about appellant] you do the same that you did on the complaint against him.'' This resulted in the return of the indictment against defendant.

The conclusion of the court that there was discriminatory enforcement of these laws was based on two findings. First, that the activities of the group of merchants in initiating the prosecutions was solely for economic reasons and second, that the '' public authorities '' (presumably the District Attorney) became agents of the merchants' group and '' chargeable with that group's discriminatory design.'' We are unable to agree with either of these findings.

The proof establishes that the action of this group of citizens was not solely for economic gain. The gentleman, who perhaps spearheaded the movement, testified that '' [n]o particular store poses an economic threat to me if I want to open on Sunday.'' He related that instead he was faced with a moral problem which he described in this fashion: '' the economic problem forces a moral problem on me because then I have to make a decision as to whether or not this is a sufficient competitive reason for me to stay open on Sunday. By me I mean our organization and our employees.'' In other words this small group of men did not act primarily for economic reasons or economic gain. If their competitors were not forced to obey the law then they were faced with the alternative of remaining open on Sunday with the resulting violation of law by themselves and their employees. The proof is clear that it was their distaste for the latter choice

that motivated their activities and not economic gain or economic survival.

Equally untenable, in our opinion, is the finding that the "public authorities" on the theory of agency became chargeable with the "discriminatory design" of the group of merchants. The activities of the latter may have been selective but it is doubtful if it was discriminatory. This small group, working without assistance from public officials, could not undertake to prosecute every violator of the Sunday laws. Their objective was the operators of supermarkets and large drugstores. This objective they pursued with their limited facilities without proof of discrimination as to their target group. We find no pertinency to the finding that public authorities co-operated with the group of merchants "to the extent that they served many of the warrants caused to be issued by the Committee." Once an information had been laid before a Magistrate and a warrant of arrest issued, the police officers had no choice but were obligated to execute the warrant. A neglect or failure to do so would have made the officer guilty of a misdemeanor (Penal Law, § 1849).

In any event, the prosecution of defendant was only remotely caused by this group activity. The proximate cause thereof was the functioning of the even-handed and nondiscriminatory announced policy of the prosecutor that all specific complaints would be investigated and prosecuted.

We find no proof to establish a pattern of discrimination consciously practiced by any public official. At most the proof "merely indicated some nonenforcement as to certain other businesses many of which were allowed to remain open for the sale of permitted commodities." (*People* v. *Friedman,* 302 N. Y. 75, 81.)

The order should be reversed and the indictment reinstated.

WILLIAMS, P. J., HENRY, NOONAN and DEL VECCHIO, JJ., concur.

Order unanimously reversed on the law and indictment reinstated.