Gabrielli, J.
(dissenting). Just three years’ ago, this court in People v L. A. Witherill, Inc. (29 NY2d 446), by a decision and opinion in which the seven Judges unanimously concurred, held specifically that the statute here under attack, section 9 of the General Business Law,[1] often referred to as the sabbath law, was a (p 449) "constitutional exercises [sic] of legislative power” and, further, that there was no basis "for defendant’s assertion that it has been denied equal protection of the law because of [claimed] discriminatory enforcement of the statute.”
Now, three of my colleagues would hold this very same *336 section to be constitutionally invalid and that it should be stricken from the statute books of our State; while, on the other hand, three other colleagues do not hold the statute unconstitutional and they reach only the cpnclusion that because of the claimed discriminatory enforcement of the statute against these defendants, the convictions should be reversed.
Hence, by implication at the very least, four members of this court do not adopt Judge Wachtler’s conclusion and appellants’ contention that the statute is constitutionally invalid; and, ironically, four members of this court do not adopt Judge Jasen’s conclusion and appellants’ contention that the claimed discriminatory enforcement of the statute is violative of the equal protection clause.
Despite the array of reversers, and somewhat, therefore, like "the voice of one crying in the wilderness”, I must vote to affirm the orders of the Erie County Court which affirmed judgments of the City Court of Buffalo convicting these defendants of the undisputed violations of the statute.
The defendants in the cases now before us do not deny they have violated the express provisions of section 9. Rather, despite the consistent holdings by this court and the United States Supreme Court (recently and for generations past), they seek to avoid responsibility because of a renewed claim of unconstitutionality and a denial of equal protection — claims rejected by this court in Witherill (supra) and numerous other cases decided by us, and the federal courts as well.

CONSTITUTIONALITY OF THE STATUTE

Section 9 of the General Business Law, last amended in 1973, is derived almost verbatim from section 2147 of the Penal Law enacted in 1909, which in turn was from section 267 of the Penal Code enacted by chapter 676 of the Laws of 1881; and these sections and the constitutional validity of the sabbath law have been consistently upheld throughout this long span, down through our decision in People v L. A. Witherill, Inc. (29 NY2d 446, supra). It is not necessary to here detail the entire litany of the numerous cases that have thus spoken to the issues.
We are required, of course and for good reason, to be mindful of the circumspection and limitations properly imposed upon courts in dealing with the constitutional validity of any statute. The appropriate rule was succinctly stated in *337 Matter of Van Berkel v Power (16 NY2d 37, 40) that legislative enactments are "supported by a presumption of validity so strong as to demand of those who attack them a demonstration of invalidity beyond a reasonable doubt, and the courts [may] strike them down only as a last unavoidable result (Lincoln Bldg. Assoc. v Barr, 1 NY2d 413; Wiggins v Town of Somers, 4 NY2d 215; Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, app dsmd 368 US 12)”. I cannot agree, nor does the record show, that this test has been met. Quite to the contrary, every signal points directly to the opposite — that the statute was a valid exercise of legislative power and is constitutional.
In 1950 this court in People v Friedman (302 NY 75, 80, app dsmd 341 US 907) unanimously rejected an attack on the constitutionality of the sabbath law and stated that "[t]he statutory scheme is that of a general prohibition against specified activities on Sunday with some exceptions as to necessities, recreation and conveniences, many of which exceptions merely emphasize that the Legislature recognizes Sunday as a day of rest, play, relaxation and recreation rather than merely as a religious Sabbath. The statutory scheme viewed as a whole is a valid one and does not constitute discrimination [citing cases].”
The constitutionality of the statute has also been upheld in People v Finkelstein (14 NY2d 608) and People v Kupprat (6 NY2d 88); and in unanimous holdings by this court in People v Weston’s Shoppers City (30 NY2d 572); People v L. A. Witherill, Inc. (29 NY2d 446, supra); People v Genovese (24 NY2d 917); People v Corpora (15 NY2d 702) and People v Paine Drug Co. (22 AD2d 156, affd 16 NY2d 503, cert den 382 US 838), to name but a few decided since 1950 only.
One need only ask: What circumstances have been shown in this record to suddenly and cavalierly, I suggest, declare this statute unconstitutional in the face of historically consistent judicial declaration to the contrary? Or, to put it another way —has there been a demonstration of invalidity beyond a reasonable doubt? The answer must, obviously, be in the negative.
One must begin to wonder where lies the stability of the law — or whether stare decisis means what we have always thought it to be — or, in fact, whether the courts are to take unto themselves the task of exercising a function never intended — that is, the prerogative of legislating. In 1959, then *338 Judge Fuld writing for an unanimous court and in interpreting the predecessor statute, containing similarly excepted items, had this to say, in a case involving Sunday sales:
"The simple fact is that the Legislature, by enacting section 2147, has announced that all sales — except those specifically excepted in the statute itself — are forbidden, even though they may not in truth disturb Sunday’s rest or repose or religious liberty. (See, e.g., People v East Coast Attic & Basement Co., 4 NY2d 954, aifg 10 Misc 2d 378; People v Moses, 140 NY 214, 215-217; People ex rel. Bender v Joyce, 174 App Div 574, 579-580; NY Legis Doc, No. 1, p 26; Note, 6 Syracuse L Rev 362, 364-365.)
* * *
"We must read statutes as they are written and, if the consequence seems unwise, unreasonable or undesirable, the argument for change is to be addressed to the Legislature, not to the courts.” (People v Kupprat, 6 NY2d 88, 90, supra).
It would seem that no more need be said nor, indeed, need any more be added to the recital of historically well-founded principle of separation of powers. Statutes are to be construed as we find them. Despite any personal predilections, we ought not, and indeed may not, sit in review of the discretion of the Legislature. Any expediency, wisdom or propriety of its action on matters particularly within its jurisdiction should be left to that body and our function is not to legislate judicially. Neither the courts, nor in fact the executive, have the right to ignore the will of the people as clearly expressed in the legislative mandates of duly elected representatives.
Neither should we be indifferent to the generally unanimous opinion of generations of Judges who, in the conscious discharge of their solemn obligations, have sustained the sabbath laws. Whatever may be my or anyone’s personal views of the efficacy of such a statute, I cannot ignore the long-established doctrine of separation of powers, nor summarily brush aside the broad consensus of decisions that have upheld this statute and its predecessor enactments.
Legal doctrine is illuminated by history — and it is made firm when consistency prevails in the decision-making process, without which complete uncertainty will raise its ugly head and destroy stability in the law; and judicial consistency loses its virtue when it is denuded by the resulting vice of uncertainty, particularly in the field of criminal law.
It is also urged by three of the reversers that there is no *339 rational basis for the selectivity of the items that may or may not be sold on Sunday. The pattern established by the Legislature, viewed as a whole is a valid one (People v Friedman, 302 NY 75, supra; People v Dunford, 207 NY 17; People v Moses, 140 NY 214; Petit v Minnesota, 177 US 164); and as this court held unanimously in Friedman (supra, p 80) "[w]hile the statute may not be perfectly symmetrical in its pattern of exclusions and inclusions, the equal protection of the laws does not require a Legislature to achieve abstract symmetry’ (Patsone v Pennsylvania, 232 US 138, 144) or to classify with mathematical nicety’ (Lindsley v Natural Carbonic Gas Co., 220 US 61, 78; Borden's Farm Products Co. v Baldwin, 293 US 194, 209).”
The Supreme Court has spoken with great clarity on this subject. In McGowan v Maryland (366 US 420, 425, 426) Chief Justice Warren wrote, in sustaining the constitutionality of sabbath laws: "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some' groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.”
And in a concurring opinion in that case, Justice Frankfurter, in addressing himself to the problem of exemptions in a Sunday sales statute, held that (p 536): "The short answer is that these kinds of commodity exceptions, and most of these exceptions for amusements and entertainments, can be found in the comprehensive Sunday statutes of England, Puerto Rico, a dozen American States, and many other countries having uniform day-of-rest legislation. Surely unreason cannot be so widespread. The notion that, with these matters excepted, the Maryland statute lacks all rational foundation is baseless. The exceptions relate to products and services which a legislature could reasonably find necessary to the physical and mental health of the people or to their recreation and relaxation on a day of repose. Other sales activity and, under Art 27, § 492, all other labor, are forbidden. That more or fewer activities that fall within the exceptions could with *340 equal rationality have been excluded from the general ban does not make irrational the selection which has actually been made.”

DENIAL OF EQUAL PROTECTION

Three of the reversers would find only that because of claimed selective enforcement, these defendants have been denied equal protection of the law. They do not, as indicated, nor as do their brother reversers, hold the statute unconstitutional.
First, it should be pointed out that the trial court, following extended hearings, made explicit findings that "[t]he motive for the institution of the prosecution, in each case, was philosophically associated with the rationale of the Sabbath law itself’ and, further, that the prosecutions were not instigated, selectively or otherwise, by "public authority” who in no way or manner played any "part in the selection of defendants to be prosecuted.” These findings were affirmed by the intermediate appellate court; and now these colleagues, despite the affirmed factual findings, are holding that "discriminatory enforcement is established in these cases as a matter of law”.
Upon the facts presented at the hearings held, these findings were made and affirmed, and in these circumstances we may not, as we have so often said, summarily ignore affirmed findings. Our power and jurisdiction is limited and we are required to accept these findings (People v Alexander, 37 NY2d 202; People v Oden, 36 NY2d 382; and cases cited therein; NY Const, art VI, § 3; Cohen and Karger, Powers of the New York Court of Appeals [rev ed], § 198, p 742), and this is so even though conflicting inferences may be drawn from the proof, for the choice of inferences is for the trier of the facts and not this court. For us to use the term "as a matter of law” does not provide us with a magic wand or permit us to exceed our power.
Quite apart from that, however, there just is not any discriminatory enforcement. In these cases, the motive for the prosecutions was specifically found to have been "philosophically associated with the rationale of the Sabbath law itself’. In People v L. A. Witherill, Inc. (29 NY2d 446, supra) the complaint was made by competitors of the defendant and, upon their filing of informations, the District Attorney prosecuted the case. Here, the complaints were made by those representing employees who ought not work on Sunday, the *341 design to achieve exactly what the statute intends. In other words, the purposeful motive for prosecutions in the present cases is stronger indeed than that present in Witherill.[2]
Attack is also made on the fact that prosecutions in cases of this type are conducted by the District Attorney when complaints are received.[3] The exact same attack was made and unanimously rejected in Witherill.
In light of these circumstances, I am at a loss to understand how some of the majority can conclude that Witherill should now be overruled; nor can I understand how’ they can further say, without explanation or amplification, that none "of the prior cases in this court presented a record adequate to adjudication of the equal protection claim”, since an examination of those cases and a reading of all the opinions noted proves just to the contrary. Despite clear holdings by this court in which the Judges spoke directly to this issue, some of my colleagues now confess or say that the decision in which they participated was not properly reached because none "of the prior cases in this court presented an adequate record to adjudication of the equal protection claim”.
However, otherwise phrased, three of the reversers hold ultimately that there exists a violation of the equal protection clause of the Constitution based upon the holding in Yick Wo v Hopkins (118 US 356). That case has been interpreted by both the Supreme Court and our State courts. In doing so, the test to be used to determine whether there exists a violation of that constitutional right has been refined to the point of extreme clarity. To state but a few: "The unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person * * * *342 or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself * * * But a discriminatory purpose is not presumed * * * there must be a showing of 'clear and intentional discrimination’ ” (Snowden v Hughes, 321 US 1, 8).
Then again, it has also been clearly held by the Supreme Court that: "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination” (Williamson v Lee Opt. Co., 348 US 483, 489).
And, in another interpretation of the constitutional provision of equal protection, that court has clearly enunciated the rule that it is required that there must be proof of more than mere nonenforcement as against other violators: "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.” (Oyer v Boles, 368 US 448, 456; see, also, Mackay Tel. Co. v Little Rock, 250 US 94, 100; Ah Sin v Wittman, 198 US 500.)
That the doctrine announced and long sustained by the Supreme Court in Yick Wo (supra) reaches only intentional or purposeful discrimination, has also been uniformly recognized by State and lower Federal courts. (See Comment, The Right to Nondiscriminatory Enforcement of State Penal Laws, 61 Col L Rev 1103, 1113-1114, n 48); and this is exactly the same test long applied in New York State, as indeed it must be, and it has been strictly so applied and interpreted (People v Friedman, 302 NY 75, supra; People v Paine Drug Co., 22 AD2d 156, supra; People v Utica Daw’s Drug Co., 16 AD2d 12).
And now, finally, addressing myself to the composite positions assumed by each set of reversers, I am impelled to again emphasize what I feel is but one vital reason for affirmance in these cases. It has been demonstrated by the citation of the several authorities in this court and the Federal courts that the claims espoused now by the majority have been rejected. One of the bulwarks of our jurisprudence is the venerable principle of stare decisis — a precept which lends itself to stability in the law. To reach the result advanced by them would do violence to the principle, which may be "bent” only *343 when there are overriding situations, none of which is here present. We have spoken, time and again, on these very matters and have held consistently that the concerns presented by the sabbath law are to be addressed to the Legislature. Nothing has occurred to require us to violate the principle of separation of powers.
What we are being asked to do here by the majority in deciding these cases favorably to the defendants is to overturn and make nothing of cases which have been regarded as law for many years, involving a statute which has been consistently construed as valid for generations past.
The orders should be affirmed.
Chief Judge Breitel and Judge Cooke concur with Judge Jasen; Judge Wachtler concurs in result in a separate opinion in which Judge Jones concurs; Judge Fuchsberg concurs in both opinions in a separate concurring opinion; Judge Gabrielli dissents and votes to affirm in an opinion.
Orders reversed, etc.

. Section 9 of the General Business Law provides that: "All manner of public selling or offering for sale of any property upon Sunday is prohibited, except as follows:” and there is then listed a number of articles which are excepted from the operation of the statute.

. Significantly, the complaints here were made in order to achieve exactly that intended by the statute, founded on the very basis of the holdings in McGowan v Maryland (366 US 420) and People v Friedman (302 NY 75, supra). For example, complainant Siddall had received complaints from union members who were required to Work Sundays, and who related how this disrupted family life. Raymond Kleinfelder’s testimony was to the same effect. This testimony formed, in part, the basis for the courts’ findings.

. Once an information has been laid, the police have no alternative but to execute it, and, the District Attorney is required to "conduct all prosecutions for crimes and offenses cognizable by the courts” (County Law, § 700, subd 1).