■ PLAYTOGS FACTORY OUTLET, INC., et al., Appellants, v COUNTY OF ORANGE et al., Respondents.—In an action *inter alia* to declare sections 2 through 10 of the General Business Law unconstitutional, plaintiffs appeal from (1) an order of the Supreme Court, Orange County, dated July 19, 1974, which (a) granted the separate motions of defendants Nelson Rockefeller, as Governor, and Louis J. Lefkowitz, as Attorney-General, for summary judgment and of defendants the County of Orange and Abraham J. Weissman, as District Attorney, to dismiss the complaint, and (b) dismissed the action as against all defendants, with prejudice, and (2) so much of a further order of the same court, dated August 30, 1974, as, upon reargument, adhered to its original determination. Appeal from order dated July 19, 1974 dismissed as academic. That order was superseded by the order of August 30, 1974. Order dated August 30, 1974 reversed insofar as appealed from, and motions denied. Plaintiffs are awarded one bill of $50 costs and disbursements, to cover both appeals, jointly against respondents appearing separately and filing separate briefs. The complaint contains several causes of action; the essential thrust of the complaint, however, is directed against the Sunday closing laws on the grounds that they are facially unconstitutional and that, as enforced, plaintiffs have been unconstitutionally discrimi-

nated against. We think that the pleadings and the affidavits submitted on the motions state a real controversy, involving substantial legal interests which may be placed in jeopardy by the threatened actions of the defendants. Thus, the remedy of a declaratory judgment is proper (see *De Veau v Braisted,* 5 AD2d 603, 606-607, affd 5 NY2d 236, affd 363 US 144). In view of the 1972 decision of the Court of Appeals in *People v L. A. Witherill, Inc.* (29 NY2d 446, 449), holding that the challenged statutes "remain constitutional exercises of legislative power", we are not inclined to declare them facially unconstitutional. Nevertheless, plaintiffs, in their affidavits in opposition to the motions, submitted evidence that defendants, in enforcing the laws, exhibited a "pattern of discrimination consciously practiced" *(People v Friedman,* 302 NY 75, 81; cf. *People v Acme Markets,* 37 NY2d 326). For this reason, issues of fact exist which require a trial. Hopkins, Acting P. J., Latham, Margett and Christ, JJ., concur; Shapiro, J., concurs as to the dismissal of the order dated July 19, 1974 and as to the reversal of the order dated August 20, 1974 and the concomitant denial of the motions, but otherwise dissents and votes to grant summary judgment to plaintiffs to the extent of (1) enjoining the Orange County defendants, including the District Attorney of the County of Orange, from enforcing the Sunday closing laws against plaintiffs and (2) declaring section 9 of the General Business Law unconstitutional, with the following memorandum: Plaintiffs brought this action *inter alia* to permanently enjoin defendants from prosecuting them for violating sections 2 through 10 of the General Business Law, the Sunday closing laws, and for judgment declaring said laws unconstitutional. Special Term granted the motion of defendants Rockefeller and Lefkowitz for summary judgment and the motion of defendants County of Orange and its District Attorney to dismiss the complaint, and dismissed the complaint as against all defendants, with prejudice. Plaintiffs' motion for reargument was granted and, upon reargument, Special Term adhered to its original determination. I agree with the majority that the motions for summary judgment and to dismiss the complaint were improperly granted, but I cannot agree that there is an issue of fact in this case which requires a trial. As I read the record, the undisputed and indisputable facts require that summary judgment be granted to plaintiffs declaring the law in question unconstitutional.

## THE ISSUES

In my view, the determinative issues in this case are (1) whether what Judge Wachtler, in his concurring opinion in *People v Acme Markets* (37 NY2d 326, 333) characterizes as the "polyglot of exceptions" contained in section 9 of the General Business Law, violates plaintiffs' right to equal protection of the laws because the classifications there established have no rational relationship to the purpose of the law,[1] and (2) whether the pattern

---

1. Section 9 of the General Business Law provides: "Public traffic on Sunday All manner of public selling or offering for sale of any property upon Sunday is prohibited, except as follows: 1. Articles of food may be sold, served, supplied and delivered at any time before ten o'clock in the morning: 2. Meals may be sold to be eaten on the premises where sold at any time of the day; 3. Caterers may serve meals to their patrons at any time of the day; 4. Prepared tobacco, bread, milk, eggs, ice, soda water, fruit, flowers, confectionery, souvenirs, items of art and antiques, newspapers, magazines, gasoline, oil, tires, cemetery monuments, drugs, medicine and surgical instruments may be sold and delivered at any time of the day. 5. Grocers, delicatessen dealers and bakeries may sell, supply, serve and deliver cooked and prepared foods,

of enforcement, and threatened enforcement, of the Sunday closing laws followed by the Orange County prosecutor against plaintiffs is so discriminatory as to constitute a denial of their right to the equal protection of the laws. There is also a procedural issue as to whether these questions are properly raised in an action for a declaratory judgment and injunctive relief.

## THE PRIOR PROCEEDINGS

### A. THE COMPLAINT.

The lengthy, and by no means clearly drawn, complaint consists of six causes of action. The first alleges that plaintiffs were charged by some of the defendants with having violated the provisions of the General Business Law barring Sunday sales, that some of the plaintiffs were convicted of such violation in April, 1972 and that, thereafter, plaintiffs were threatened by those defendants that, if they again opened for business on any Sunday, and if a complaint were filed against them, plaintiffs would be prosecuted for those later violations and subjected to "the imposition of harsher penalties", including confiscation, under section 12 of the General Business Law, of all plaintiffs' goods, wares and merchandise offered for sale in violation of the law. The first cause of action then alleges that the statute involved is unconstitutional under the First and Fourteenth Amendments of the United States Constitution as a law interfering with the freedom of religion.[2] There are also allegations in this cause of action that most of the exceptions authorized by the statute, allowing for the sales of food and liquor and for certain other permitted Sunday activities, were carried on closer to churches and homes than were the stores of plaintiffs and were therefore "more violative of the statutory intent." The second cause of action alleges that defendants' interference with plaintiffs' rights to do business violates the Fourteenth Amendment ban on the taking of property without due process of law. The third cause of action sets forth the grounds for plaintiffs' claim that defendants' method of enforcement resulted in intentional discrimination against plaintiffs as large businesses. This cause of action

---

between the hours of four o'clock in the afternoon and half-past seven o'clock in the evening, in addition to the time provided for in subdivision one hereof, and, elsewhere than in cities and villages having a population of forty thousand or more, delicatessen dealers, bakeries and farmers' markets or roadside stands selling fresh vegetables and other farm produce, and fishing tackle and bait stores may sell, supply, serve and deliver merchandise usually sold by them, at any time of the day. 6. Persons, firms or corporations holding licenses and/or permits issued under the provisions of the alcoholic beverage control law permitting the sale of beer at retail, may sell such beverage at retail on Sunday before three antemeridian and after twelve noon for off-premises consumption to persons making purchases at the licensed premises to be taken by them from the licensed premises. 7. Sale at public auction of thoroughbred, standardbred and quarter horse racehorses. The provisions of this section, however, shall not be construed to allow or permit the public sale or exposing for sale or delivery of uncooked flesh foods or meats, fresh or salt, at any hour or time of the day. Delicatessen dealers shall not be considered as caterers within subdivision three hereof."

2. There is now no doubt that Sunday closing laws do not violate the religious clauses of the First Amendment of the Constitution (see *McGowan v Maryland,* 366 US 420, 422, *supra,* and *People v L. A. Witherill, Inc.,* 29 NY2d 446, *supra)* so that a discussion of that question is not germane to the issues before us.

alleges that a private individual complainant, a chiropractor, who opposes sales of merchandise on Sunday by "divers large, substantial and active businesses", and who is characterized as "the self-appointed guardian of the health and morals of the citizenry of Orange County", has "enunciated and publicly proclaimed" that Sunday sales by small establishments were exempt from his charges of Sunday violations and that he had made complaints only against large businesses, not small ones. The third cause of action also alleges that defendants were aware of the complainant chiropractor's plan and policy but, nevertheless, continued to enforce the Sunday closing laws on the basis of individual complaints made by him. The third cause of action also incorporates, by reference, all of the allegations of the first cause of action. In paragraph 44 thereof, plaintiffs allege: "That the said defendants and each of them have threatened that if the said plaintiffs thereafter opened their respective premises for business on any Sunday and offered merchandise for sale on such date, and if there was filed with any of the governmental bodies or officers having jurisdiction thereof a complaint against the plaintiffs or any one of them with respect to such acts, that the said plaintiffs would be further prosecuted for an alleged violation of such statutes, and the imposition of harsher penalties." This allegation is undenied by defendants the County of Orange and its District Attorney in their answer. Also admitted by said defendants is paragraph 45 of the complaint (also incorporated in the third cause of action): "That the said defendants and each of them have threatened that if the said plaintiffs thereafter opened their respective premises for business on any Sunday and offered merchandise for sale on such date, and if there was filed with any of the governmental bodies or officers having jurisdiction thereof a complaint against the plaintiffs or any one of them with respect to such acts, that the said plaintiffs would be further prosecuted for an alleged violation of such statutes, *and in addition to the penalties to be imposed upon the said plaintiffs and its employees that the goods, wares and merchandise of the said plaintiffs would be confiscated."* (Emphasis supplied.) In their brief to this court defendants the County of Orange and the District Attorney of Orange County admit that "Each complaint filed by a citizen was acted upon, but there was no independent effort of the law enforcement officials of the County to initiate complaints or informations." Also included in the third cause of action was a list of 20 retail stores which are located in the City of Middletown, Orange County, which, unlike plaintiff Playtogs Factory Outlet, Inc., have been, and currently are, open on Sundays and offer merchandise for sale in violation of the law as it is written. Since my determination in this case is predicated upon plaintiffs' first and third causes of action, I do not deem it necessary to consider the fourth, fifth and sixth causes set forth in the complaint.

### B. PRIOR CONVICTIONS OF PLAINTIFFS.

It appears from the affidavits in the record and the uncontradicted assertions in the complaint, that at least some of the plaintiffs were the subject of a prior prosecution for violation of the Sunday closing laws. In that prosecution they moved to dismiss the complaint, making contentions similar to those in this action. Before passing on their motions, the City Judge, in conformity with the procedure outlined in *People v Utica Daw's Drug Co.* (16 AD2d 12), held a pretrial hearing to determine whether they had been the victims of discriminatory enforcement of section 9 of the General Business Law. The City Judge, based upon the uncontradicted testimony of the witnesses, found that many stores, both large and small, in

all parts of the City of Middletown, openly sold articles in violation of section 9 without being prosecuted. The facts testified to by the law enforcement authorities are most revealing and make it crystal clear that discriminatory enforcement against plaintiffs (some of the defendants in the criminal prosecution) was not only intended, but was affirmatively admitted. As an example, the Chief of Police conceded that his department did not make self-initiated investigations of illegal sales under section 9 *and that in the absence of any specific complaints by individuals,* his department took no action under the Sunday closing laws. He testified that, when a person made a specific complaint against any store, a deposition under oath was taken from the person making the complaint; a police officer would then check out the particular establishment and thereafter would make a complaint based upon the deposition of the person who had initiated the complaint against the store. *Finally, the Chief of Police admitted that he and the District Attorney had agreed on a policy with reference to enforcement of the Sunday blue laws,* to wit, that the District Attorney would prosecute cases under those laws if the police signed "the complaint on information and belief" and that was why the police "followed through on this vein". The City Court denied the motions to dismiss and the prosecution was carried through to conviction.

C. THE MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS THE COMPLAINT.

At Special Term, defendants, the County of Orange and the District Attorney of Orange County moved to dismiss the complaint, contending primarily that the issues raised therein were the same as those raised in the prior successful criminal prosecutions of plaintiffs and that, therefore, plaintiffs were foreclosed on those issues by *"res adjudicata* and/or collateral estoppel as to all issues now raised against the County of Orange and Abraham J. Weissman as District Attorney of the County of Orange."[3] The New York State defendants, the Governor and the Attorney-General, moved for summary judgment. In their supporting affidavit, they admitted that

3. In their brief on this appeal, the County of Orange and the District Attorney of Orange County do not urge the *res judicata* collateral estoppel argument recognizable under the authority of a case such as *Quaker Oats Co. v City of New York* (295 NY 527, affd *sub nom. Hill Packing Co. v City of New York,* 331 US 787) (see, also, *903 Park Ave. Corp. v City Rent Agency,* 31 NY2d 330). These defendants state that "in reaching a decision, this Court must consider the law as it is today and not as it was at the time of the decision in the lower court." While there is no such concession by the Governor and the Attorney-General of the State of New York, there is no merit to the *res judicata* collateral estoppel conclusion for a number of reasons. In the first place, the decision by the City Court was rendered at a time when the Appellate Division had held that there was no selective enforcement in the *Acme Markets* case and, therefore, before the reversal of that decision by the Court of Appeals. Secondly, in every case of collateral estoppel, as Mr. Justice Hopkins said in *Read v Sacco* (49 AD2d 471, 473), "the question of fairness—an inherent element of due process—in the application of the doctrine must be the crowning consideration" and, as I said in *Vincent v Thompson* (50 AD2d 211, 218), "the collateral estoppel doctrine should not 'be applied rigidly', and then only when the issue which has been decided in the prior action 'is decisive of the present action' and that the litigant urging the applicability of that doctrine has 'the burden of showing that the issue was identical' ". Collateral estoppel cannot be indiscriminately applied and must be viewed in each case, on an *ad hoc* basis, to see that its invocation does not infringe upon basic fairness and due process.

"there are no issues of fact in this case as between plaintiffs and defendants Rockefeller and Lefkowitz. The only issues involved are those of law, to wit: is the statute constitutional?"

THE LAW

This case is still another example of the persistent nature of the economic, legal and social conflicts which have surrounded the existence and enforcement of the Sunday closing laws. An examination of the cases involving efforts to enforce or strike down those laws reflects not so much an interest in protecting the day-of-rest concept, which is supposedly the basis for such legislation (see *McGowan v Maryland,* 366 US 420), but rather a desire by one interest group to obtain for itself some competitive advantage over another interest group. Thus, in *People v L. A. Witherill, Inc.* (29 NY2d 446), the individuals who filed the information charging the Sabbath law violations against the defendant operator of a retail store, were "employees of rival stores" *(id.,* p 448). In *People v Genovese* (24 NY2d 917), defendants, employees of a chain of drugstores, contended that the police enforced the· law only against their employer's drugstores. In *People v Utica Daw's Drug Co.* (16 AD2d 12, 13, *supra),* defendant maintained that the prosecution was part of a discriminatory design aimed at those engaged in "cut-rate" drugstore operations. In *People v Paine Drug Co.* (22 AD2d 156, 157–158, affd 16 NY2d 503), the complainants were the employees of "a group of prominent merchants in Rochester and environs—members of a Retail Merchants' Council" who became "concerned with the general nonobservance of the Sabbath laws by certain of their competitors" and met with a group of public officials, including the Sheriff and District Attorney of the county, to request prosecution of violators. In *People v Acme Markets (supra)* it was the Amalgamated Meatcutters Union which sought to use the Sunday closing laws to protect the interests of its members working in supermarkets. Often those who seek to invoke the Sunday closing laws against those competing with them have sought to hide their self-interest in a cloak of concern for religious observance, or for the poor working man, but such deceptions should not be given credence by law enforcement agencies, or by the courts, for neither the agencies enforcing our criminal laws nor the courts should allow themselves to be thus used as cat's-paws by those who seek to utilize the Sunday closing laws for their selfish competitive advantage. When prosecutors follow a policy with respect to enforcement of the Sunday closing laws of initiating criminal prosecutions for violations only on the complaints of private individuals, they become the tools of the private interest of the complainants and thus prostitute the State's law enforcement power to the service of selfish private goals. In *People v Acme Markets* (37 NY2d 326, *supra),* a majority of five members of the Court of Appeals reached precisely that conclusion in dealing with an attack on a system of enforcement of the Sunday laws similar to that used in this case. There, the District Attorney of Erie County testified that, over a seven-year period, it was his policy not to prosecute Sunday sales law violations, but that if an arrest were made, i.e., if an information was filed, prosecution would follow. It was his view that active and general enforcement would deluge the already over-burdened courts and, he stated, he had no general enforcement plan for Sunday sales violations. There was also police testimony that it was the policy of the police in the area to act on Sunday sales violations only on complaints by private citizens. Thus, the enforcement pattern there was similar to that in this case. Judge Jasen, speaking for the court in *Acme Markets,* said of this pattern (p 331):

"Assuming the fairness of the statute on its face and ascribing the actions of the meatcutters to the District Attorney, discriminatory enforcement is established in these cases as a matter of law. As found by the courts below, the Sunday sales law has fallen into a sort of desuetude by law agencies in Erie County, unenforced, save upon complaint. And then it is perhaps unenforceable in an even-handed and fair manner. Indeed, it is not an exaggeration to say that enforcement has been totally surrendered to private parties and interest groups who without constraint may manipulate the law for purely private purposes. This is an unseemly state of affairs openly inviting discrimination and harassment of one group by another." On this appeal, the complaint and the answers and admissions of defendants, the uncontradicted allegations in the affidavits of plaintiffs in opposition to the motions, and the uncontradicted testimony in the prior criminal proceeding against some of these plaintiffs, demonstrate clearly that in Orange County, as in Erie County in the *Acme Markets* case, the Sunday sales law was "unenforced, save upon complaint" and that here, as there, the admitted policy of the prosecutor and police, to take action to enforce the Sunday sales law only upon complaint by private individuals, necessarily brings about "enforcement [which] has been totally surrendered to private parties and interest groups who without constraint may manipulate the law for purely private purposes." In their brief to this court, the County of Orange and the District Attorney admit that their prosecution and the resulting conviction of some of these plaintiffs was discriminatory under the rule laid down in the *Acme Markets* case, but justify their prosecution on the ground that: "When the instant case was decided in the Supreme Court of Orange County * * * the Court of Appeals in a long procession of cases, had held totally contrary to the decision reached in *Acme Markets,* in that prosecutions based on individual complaints were valid and didn't constitute discriminatory enforcement. (See, *People v. L.A. Witherill, Inc.,* 29 N. Y. 2d 446 (1972); *People v. Friedman,* 302 N.Y. 75 (1950); *People v. Kupprat,* 6 N. Y. 2d 88 (1959))." Under the circumstances, I am at a loss to understand the conclusion of my brethren that a trial is required to determine whether the submitted evidence exhibits "a pattern of discrimination consciously practiced". Not only are such discriminatory practices admitted, but the County of Orange and the District Attorney justify them on the ground that what they did was permissible before the decision by the Court of Appeals in the *Acme Markets* case. Further, the same defendants urge that they: "are bound by the *Acme Markets* decision, which leaves the Appellants free from the discriminatory enforcement they sought to void in the Court below. In order to maintain this action, it is necessary that the Appellant's rights be in jeopardy and the Appellant have a distinct legally cognizable personal stake in order to assure adversariness, aid the Court in its decision and guard against an advisory opinion. 3 *Weinstein-Korn-Miller, N.Y. Civil Practice,* par. 3001.04 (1974)." These defendants conclude, therefore, that "Appellants no longer have a personal stake in this case." That contention of mootness, however, overlooks the fact that plaintiffs are still subject to prosecution for violation of the Sabbath laws by the District Attorney of Orange County on a nondiscriminatory basis (and the seizure of their property in connection with such prosecution). It is that danger which requires us, in my opinion, to reach the question of the constitutionality of the Sabbath statute.[4] I therefore reach the question upon which Judge

---

4. Even if the mootness claim had any validity, we should still decide the issues for, as the Court of Appeals said in *Matter of Jones v Berman* (37 NY2d 42, 57), "to

Wachtler's concurring opinion in *Acme Markets* was based. Judge Jasen, writing for the majority, found it unnecessary to reach that question, but noted that his failure to reach it was "not to imply that the statute is free of doubt" *(People v Acme Markets, supra,* p 331). That question is whether section 9 of the General Business Law "denies equal protection because the classifications drawn [which delineate many classes of exceptions from the general ban of sale of merchandise on Sundays] are 'wholly irrational' " *(id.,* p 331). While declining to deal with that issue, Judge Jasen did say *(id.,* pp. 331–332): "While the equal protection guarantee does not require absolute symmetry in classification, distinctions must reasonably relate to the legislative object sought to be attained. And there is a point at which proliferating exceptions to the general proscription of Sunday public selling reasonably may not be squared with the statutory purpose. Put another way, a point is reached where the exceptions swallow up the rule and render the total statutory scheme arbitrary. But reasonable exceptions to the general ban are, of course, permissible for it would be a horror absolutely to bar Sunday selling. The day of rest rationale remains historically and constitutionally valid and all that is required is that the classifications drawn reasonably promote the underlying statutory purposes." (Footnote omitted.) The question which the Court of Appeals majority left open must, in my opinion, be reached in this case and it requires a finding that the statute is unconstitutional since the classifications enumerated therein do not "reasonably promote the underlying statutory purposes" because the "exceptions to the general.proscription of Sunday public selling reasonably may not be squared with the statutory purpose". I reach that conclusion on the basis of the reasoning so persuasively set forth in Judge Wachtler's concurring opinion in *People v Acme Markets* (37 NY2d 326, 332–335, *supra).* I wholeheartedly agree with him that an examination of section 9 of the General Business Law demonstrates beyond peradventure that "the arbitrary classifications incorporated in this statute * * * are wholly irrelevant to the achievement of the State's objective (see *McGowan v Maryland,* 366 US 420, 425, *supra)"* and that "When, as here, a system of classifications is so lacking in rationality as to obscure or subvert a legitimate legislative goal, that statute is violative of equal protection and should be declared unconstitutional" (p 334). The crazy-quilt nature of the classifications in the statute makes it crystal clear that they are lacking in rhyme or reason and bear no relationship to reality. They constitute nothing but a hodgepodge enumeration, lacking any sensible rational basis. For instance, they permit purchase of Christmas trees from a lot, but not ornaments for them from a store; razor blades may be purchased, but not razors; and one may purchase a "girlie" magazine in a stationery store, but not a Bible in a bookstore. Having concluded that the statute is unconstitutional on its face, there remains for consideration the procedural issue whether plaintiffs may, in a civil action, obtain a declaration that a penal statute is invalid and prohibit its enforcement by way of an injunction. While there are intimations, and even holdings, in the earlier cases that declaratory relief, like equitable relief generally, is inappropriate where the administration of the criminal law is involved, it now seems reasonably well settled that, in a proper case, declaratory relief may be granted notwithstanding that the declaration is as to the validity or construction of a statute having criminal or penal

remove all doubt we should state that the questions presented, being of importance and interest and because of the likeliness that they will recur, are properly entertainable by the court, irrespective of any allegations of mootness".

provisions. Thus, declaratory relief will not be denied merely because plaintiff, by violating the statute in question, could have the issue of his guilt tried in a criminal prosecution. Speaking to that issue, the court in *New York Foreign Trade Zone Operators v State Liq. Auth.* (285 NY 272, 276) said: "The remedy [declaratory judgment] is available in cases 'where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved.' *(Dun & Bradstreet, Inc. v City of New York, supra,* p. 206; *Bank of Yorktown v Boland,* 280 N.Y. 673.) The remedy, however, is not available to restrain the enforcement of a criminal prosecution where the facts are in dispute, or open to different interpretations. *(Mills Novelty Co. v. Sunderman,* 266 N. Y. 32; *Reed v Littleton, supra; Guide Escort Service, Inc. v. Moss,* 260 App. Div. 920.)" The court continued (pp 277–278): "Defendants argue that a declaratory judgment in this case would interfere with the administration of the criminal law, and under the rule of *Reed v. Littleton (supra)* may not be granted. If either of the above questions were answered in the negative in this action, the determination would impede a subsequent action for an injunction under section 123 of the Alcoholic Beverage Control Law or a criminal prosecution under section 130 of that law. But would such a determination improperly interfere with criminal processes? We think not. The only questions involved are of law. A determination of these questions is necessary to enable plaintiff to continue a business authorized by the Federal government for the purpose of expediting and encouraging foreign commerce. To refuse to consider the questions in this action leaves unstable a jural relation, the facts of which are conceded, imposes upon the plaintiff an unnecessary hardship, and may affect foreign commerce. * * * The courts below have held that there are other remedies available to plaintiff by which its rights may be adequately protected. The remedies referred to are of a negative character. Plaintiff can bring no other action, but it can wait and defend an action by defendants or any taxpayer residing in the locality for an injunction, when and if such an action is brought. (Alcoholic Beverage Control Law, § 123.) Meanwhile, although the facts are not disputed, it runs the risk of a criminal prosecution. (Alcoholic Beverage Control Law, § 130.) Whether a defense ever may be considered another adequate remedy so as to warrant a denial of declaratory relief, the defense here said to be available to plaintiff certainly is not an adequate remedy. *(Kalman v. Shubert,* 270 N.Y. 375.)" The salutary doctrine laid down in that case was followed in *Bunis v Conway* (17 AD2d 207, 208–209), where the court said: "It is the settled law that an action for a declaratory judgment will lie 'where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved' *(Dun & Bradstreet v. City of New York,* 276 N. Y. 198, 206). The remedy of declaratory judgment is available, not only where the validity of a statute is in question, but also where its construction or its application to an undisputed set of facts is in question *(New York Foreign Trade Zone Operators v. State Liq. Auth.,* 285 N.Y. 272). * * * 'Resort to this remedy and also to that of an injunction may be had even with respect to penal statutes and against a public official or public agency whose duty it is to conduct appropriate prosecutions, if the purpose be to avoid irreparable injury and if the sole question is one of law' *(De Veau v. Braisted,* 5 A D 2d 603, 606–607, affd 5 N Y 2d 236, affd. 363 U. S. 144; see, also, *Herald Pub. Co. v. Bill,* 142 Conn. 53; *Lucky Calendar Co. v. Cohen,* 19 N. J. 399)." See, also, *Namro Holding Corp. v City of New York* (17 AD2d 431), where the court said (p 434–435): "Where the meaning or validity of a statute is in question and no questions of fact

are present, declaratory judgment is proper. *(Dun & Bradstreet v. City of New York,* 276 N. Y. 198, 206.) It is also appropriate when the application of a statute to a given case is challenged. *(Richfield Oil Corp. v. City of Syracuse,* 287 N. Y. 234, 239.) The fact that a declaratory judgment may serve to preclude a criminal prosecution does not affect the right to relief when it appears that a jural relation is sought to be stabilized and substantial property rights are involved. *(New York Foreign Trade Zone Operators v. State Liq. Auth.,* 285 N.Y. 272, 277–278.)"

### THE REMEDY

Since *all* defendants appearing herein now concede that there are no issues of fact to be tried, and since the attack on section 9 of the General Business Law is based solely on its claimed unconstitutionality, plaintiffs are entitled to a declaratory judgment and to injunctive relief, if that is needed to implement the declaratory judgment. If my analysis of the law and the facts is correct, the orders here under appeal, granting summary judgment to defendants and dismissing the complaint, should not only be reversed but, since the dispute between the parties is solely one of law, the situation is similar to that in *Peoples Sav. Bank of Yonkers, v County Dollar Corp.* (43 AD2d 327, affd 35 NY2d 836 on the opn below), where we held that CPLR 3212 (subd [b]) permits the court, on a summary judgment motion, to grant it instead to the movants' adversaries even though the latter did not request such relief, and that the exercise of that right may take place even at the appellate level. Accordingly, the orders under review should be reversed and summary judgment should be granted to plaintiffs to the extent of (1) enjoining the Orange County defendants, including the District Attorney of the County of Orange, from enforcing the Sunday closing laws against plaintiffs, and (2) declaring section 9 of the General Business Law unconstitutional and void.