Joseph P. Kuszynski, J.
Plaintiffs, chain department store operators in Erie County, move for summary judgment on their second cause of action for a declaratory judgment wherein a determination is sought that the so-called "Sunday Blue Laws” (General Business Law, art 2) are unconstitutional. Plaintiffs have brought this declaratory action when the District Attorney of Erie County announced his intention to strictly enforce these laws.
The defendant Attorney-General cross-moves for summary judgment to declare these laws to be constitutional. The defendant District Attorney seeks a dismissal of plaintiffs’ complaint on the issue of constitutionality.
*903 Plaintiffs contend they have raised a justiciable controversy with no questions of fact outstanding which may possibly bar the entry of an accelerated judgment.
The right of the State of New York to pass a sabbath closing law is not open to question. State Legislatures within their general police powers have the right to enact legislation setting aside a day of rest and regulating and restricting sales on that day to protect all persons from the physical and moral debasement which comes from uninterrupted labor. (McGowan v State of Maryland, 366 US 420; People v Friedman, 302 NY 75; People v Genovese, 24 NY2d 917.)
"[Although some doubt may exist as to the utility of Sabbath Laws in our modern society, their enactments remain constitutional exercises of legislative power.” (People v L.A. Witherill Inc., 29 NY2d 446, 449.)
Sunday legislation is more than 16 centuries old; it originated in Rome in a.d. 321 when Constantine the Great passed an edict commanding all Judges and inhabitants of cities to rest on the venerable day of the sun. Sunday statutes were passed at an early date in England and page 412 of ch 7 of the 29th year of Charles II (1660-1685) has been the basis of similar legislation for many of the States. A few statutes regulating the observance of Sunday were enacted in this country during the colonial period. The first, perhaps, was in the Virginia Colony at Jamestown in 1617. (See 83 CJS, Sunday, § 3, subd a.)
The New York sabbath law has its genesis in the ordinances of New Amsterdam of 1664. When the Colony of New York became a State it took over into its system of laws, a prohibition against various activities on Sundays from the Act of October 22, 1695, which has survived to our times in its substantive form through the re-enactments of 1881 and 1909.
The New York Sunday blue law (General Business Law, art 2) contains general prohibitions: Section 5 concerns labor, section 7 has to do with public events while section 8 deals with manufacturing.
Section 9 which restricts merchandising on a Sunday reads as follows:
"§ 9. Public traffic on Sunday
“All manner of public selling or offering for sale of any property upon Sunday is prohibited, except as follows: 1. *904 Articles of food may be sold, served, supplied and delivered at any time before ten o’clock in the morning:
"2. Meals may be sold to be eaten on the . premises where sold at any time of the day;
"3. Caterers may serve meals to their patrons at any time of the day;
"4. Prepared tobacco, bread, milk, eggs, ice, soda-water, fruit, flowers, confectionary, souvenirs, items of art and antiques, newspapers, magazines, gasoline, oil, tires, cemetery monuments, drugs, medicine and surgical instruments may be sold and delivered at any time of the day.
"5. Grocers, delicatessen dealers and bakeries may sell, supply, serve and deliver cooked and prepared foods, between the hours of four o’clock in the afternoon and half-past seven o’clock in the evening, in addition to the time provided for in subdivision one hereof, and, elsewhere than in cities and villages having a population of forty thousand or more, delicatessen dealers, bakeries and farmers’ markets or roadside stands selling fresh vegetables and other farm produce, and fishing tackle and bait stores may sell, supply, serve and deliver merchandise usually sold by them, at any time of the day.
"6. Persons, firms or corporations holding licenses and/or permits issued under the provisions of the alcoholic beverage control law permitting the sale of beer at retail, may sell such beverages at retail on Sunday before three antemeridian and after twelve noon for off-premises consumption to persons making purchases at the licensed premises to be taken by them from the licensed premises.
"7. Sale at public auction of thoroughbred, standardbred and quarter horse racehorses.
"The provisions of this section, however, shall not be construed to allow or permit the public sale or exposing for sale or delivery of uncooked flesh foods or meats, fresh or salt, at any hour or time of the day. Delicatessen dealers shall not be considered as caterers within subdivision three hereof.”
While the plaintiffs urge upon this court that the entire sabbath law is anachronistic and no longer in step with the life-styles and attitudes of today’s society, the pointed issue is made with the categories of proscribed and permitted selling. They contend the general proscription in the Sunday closing law (General Business Law, § 9) against "all manner of sell *905 ing” and the kind of exceptions carved out has created “so arbitrary a system of classification, so out of touch with modern life, that it is impossible to decipher a legitimate legislative scheme”. They assert section 9, as written, is therefore violative of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States, and section 2 of article 1 of the New York State Constitution.
Plaintiffs further contend the law restricting Sunday sales is incapable of equitable enforcement and is vague in its classifications because it fails to give a constitutionally sufficient notice of what is prohibited. In support of their argument that the statute restricting Sunday sales no longer bears any meaningful relationship to the accepted habits of the mobile, convenience-oriented society of today, pointed out are many anomalies, some dramatic which are readily discernible “on its face” from a mere reading of the section.
A cemetery monument may be purchased on a Sunday but, if hungry, a person cannot legally purchase a steak in a meat market.
The sale of a sweater is impermissible; however, if the sweater is labeled “souvenir” it can be sold on a Sunday.
Medicine for a baby’s diaper rash is permitted under the Sunday closing law but not the sale of diapers.
A child’s school notebook cannot be legally sold on a Sunday.
"Soda-water” so defined, may be legally sold but not the glass or the disposable plastic cup in which it may be consumed.
Although the playing of golf, tennis, baseball and other sports is permitted, it is illegal to sell any sporting equipment on a Sunday as golf balls, tennis rackets, etc.
Flowers may be sold but not a get well card.
In many businesses, it is prohibited to sell items which are stocked on the same shelf alongside related items whose sale is permitted.
A gas station operator is permitted to sell gasoline, oil and. tires as being necessary to the propulsion of the automobile; yet, it is illegal for him to sell other equally indispensable commodities such as windshield wipers, bulbs, fuses, headlights or even a plastic windshield ice scraper.
Bread may be sold in a supermarket but not the cheese or cold cuts to make a sandwich.
*906 Tobacco may be sold, however, a pipe, lighter or matches may not.
Magazines as "Playboy” or "Penthouse” are permitted but the sale of a classic as Mark Twain’s "Tom Sawyer” constitutes a violation. The height of absurdity may well be that under the Sunday closing law as written, the sale of a Bible itself may constitute a violation.
Plaintiffs maintain the classification of what is permitted and what is not ignores also the economic realities. While a pharmacy may remain open on Sunday for the purpose of selling the essential "drugs, medicines and surgical instruments” (General Business Law, § 9, subd 4) a modern drugstore can ill afford to do so for this purpose alone, if it cannot sell other merchandise which it carries in its diversified inventory.
It is further argued that for many families it is a way of life on Sundays, especially during summer, to depend upon fast prepared take-out foods for their sustenance. Permitted are only "meals to be sold to be eaten on the premises where sold” (General Business Law, § 9, subd 2). The point is well made that one can only shudder at the number of times this law is violated every Sunday, throughout the width and breadth of this State in the countless situations of the take-out stands selling fried chicken, pizzas, hot dogs and hamburgers to be consumed either at home or in automobiles away from "the premises where sold”.
Plaintiffs point out that very few engaged in real estate selling, especially those utilizing the popular Sunday afternoon "open house inspection” technique of home selling, realize that in so doing, they are violating the Sunday blue laws because the "offering for sale of any property upon Sunday is prohibited” (Preamble, General Business Law, § 9).
The Attorney-General asserts that, historically, arguments for a change of a law should be addressed to the Legislature. (People v Kupprat, 6 NY2d 88.) This court agrees the need is most compelling for legislative action to update the sabbath laws to make them more responsive to the sociological and economic realities of our times. Paradoxically the "crazy quilt”* dichotomy between the inclusions and exclusions of the law restricting Sunday Sales (General Business Law, § 9) was further accentuated by the passing by the Legislature and *907 the signing into law by the Governor in August, 1975 of still another exception (General Business Law, § 9, subd 7) allowing sales "at public auction of thoroughbreds, standardbred and quarter horse racehorses”.
It is the intent of this court merely to interpret a statute as written in light of its challenged constitutionality.
In People v Acme Markets (37 NY2d 326) Judge Fuchsberg stated, referring to section 9 of the General Business Law "the classifications defy reason” (p 335). Judge Wachtler called it a "system of classifications * * * so lacking in rationality as to obscure or subvert a legitimate legislative goal” (p 334). Judge Jasen in the majority opinion stated it was unnecessary to reach the point of whether section 9 of the General Business Law denies equal protection, "But that is not to imply that the statute is free of doubt * * * and we would prefer to leave it for another day” (pp 331-332).
For this court that "another day” has arrived! This court finds the "polyglot of exceptions to the general closing mandate”* subverts the avowed legislative purpose in its relation to the realities of life as they exist today. As written, the law restricting Sunday sales (39), denies equal protection because of the many infirmities in its statutory scheme.
Its classifications being a vestige of another age, devoid of rhyme, reason or symmetry must necessarily make for selective and discriminatory enforcement which at best has been sporadic soon losing its momentum. Additionally, the classifications are discriminatory as to residents of cities and villages of more than 40,000 inhabitants by failing to give them equal protection under the law. The Sunday closing laws are more restrictive in their application to those inhabitants as opposed to those residing in political subdivisions of less than 40,000 in population.
The art of merchandising has changed. Many prohibited items are now more accessible to the public on a Sunday by means of the vending machines. The State of New York maintains them along the length of the New York Thruway which offer and dispense a plethora of items such as combs, toothbrushes, pantyhose and other proscribed items on a seven-day-week basis. If the State, through its agencies, can promote the sale of these commodities on a Sunday, it defies *908 logic, why the State should prohibit regular channels of merchandising from doing the same thing.
Another aspect of the Sunday closing law indicating its outmoded usefulness is the penalty for its violation as provided in section 12 which allows for the forfeiture of all commodities "exposed for sale” and turning the proceeds to the "overseers of the poor”. Obviously, this was designed for a simpler time when merchandising was done in small shops or by peddlers and did not contemplate the forfeiture of goods valued at many thousands of dollars as is the case with the corporate plaintiffs herein. A penalty of this nature with its severe forfeiture features in relation to the proscribed wrongdoing is harsh and unconstitutional because it is violative of due process and equal protection under the law; clearly an inordinate punishment provision as archaic as the branding or mutilation of a convicted individual defendant.
It is apparent, too, that in the aftermath of the Acme case (supra) which rejected selective enforcement by means of complaints motivated by interested groups for their own private purposes, the poor record of uniform enforcement throughout the State will not improve. Experience has taught mankind that the retention of unenforceable laws which are universally violated, breeds contempt for the law in general.
The so-called "affirmative defenses” set forth by the District Attorney in his answer do not constitute any bar to the determination of the constitutionality issue of the laws in question. They are dismissed insofar as this cause of action is concerned. The State of New York, named defendant in this action, agrees with plaintiffs’ position, that no impediment exists to an accelerated disposition of the constitutionality issue.
Plaintiffs’ motions are granted with respect to sections 9 and 12 of the General Business Law.

 People v Abrahams (83 Misc 2d 681, 682).

 People v Acme Markets (supra, p 333).