BRANIFF INTERNATIONAL, INC., et al., Plaintiffs-Appellants,

v.

FLORIDA PUBLIC SERVICE COMMISSION et al., Defendants-Appellees.

No. 76–3791.

United States Court of Appeals, Fifth Circuit.

July 20, 1978.

Rehearing Denied Aug. 14, 1978.

John W. Costigan, John A. Madigan, Jr., Tallahassee, Fla., W. A. Nelson, Washington, D. C., William B. Killian, Miami, Fla., for plaintiffs-appellants.

Prentice P. Pruitt, J. B. Curasi, Joseph A. McGlothlin, Tallahassee, Fla., for defendants-appellees.

Before TUTTLE, GEE and FAY, Circuit Judges.

TUTTLE, Circuit Judge:

The case on appeal presents a question of first impression in this Circuit: the extent to which the Supreme Court's decision in *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), circumscribes the power of a federal district court to entertain a constitutional challenge to a state statute. The district court, relying primarily upon dictum in *Wycoff*, concluded that it lacked subject matter jurisdiction over appellants' claims. We reverse.

The appellants in this case are six air carriers, Braniff International, Inc., Delta Airlines, Inc., Eastern Airlines, Inc., Northwest Airlines, Inc., Southern Airways, Inc., and Transworld Airlines, Inc., all of which are engaged in interstate and foreign commerce pursuant to "Certificates of Public Convenience and Necessity" issued by the Civil Aeronautics Board. *See* 49 U.S.C. § 1371(a). The appellees are the Florida Public Service Commission, its chairman and individual members. The Commission is an agency of the State of Florida charged with the regulation of utilities and transportation companies doing business entirely within the state.

In 1972 the Florida Legislature, with the express purpose of regulating air carriers within the state,[1] enacted the following statute:

> The [public service] commission is empowered to disapprove, after notice and hearing, any change in a rate, fare, or schedule between points in this state of *a person engaged in air transportation pursuant to a certificate or certificates issued by the civil aeronautics board* pursuant to section 401 of the Federal Aviation Act of 1958, . . . if such change would impose an undue economic burden on state certificated air carriers operating between the same points. The commission *shall* adopt rules and regulations requiring such persons to file notice of such changes with the commission on the effective date thereof, and the commission *shall* cause notice thereof promptly to be delivered to every state certificated carrier. A notice of hearing *shall* be issued within thirty days after such effective date upon complaint of any state certificated air carrier, and the hearing may be held after thirty days after service of such notice of hearing upon the person making such change in a rate, fare, or schedule. . . .

Fla.Stat. § 330.53 (1973) (emphasis added). There is no dispute but that the statutory language purports to empower the Commission, under the prescribed circumstances, to regulate certain business activities of the appellants.

In accordance with the express statutory command that it do so, the Commission, on May 16, 1975, proposed to adopt the following rule:

1. Fla.Stat. § 330.45 (1975) provides:

   The purpose of sections 330.45–330.53 is to provide regulation of air carriers within the state, in order that low cost, high volume air transportation may be established between the major areas of this state.

1.  All persons engaged in air transportation pursuant to a certificate . . issued by the Civil Aeronautics Board . . . shall file with the Florida Public Service Commission notice of any change in their rates, fares or schedules between points in the State of Florida. Such notice shall be filed not later than on the effective date thereof.

2.  The Commission shall cause notice thereof promptly to be delivered to every state certificated air carrier.

3.  A notice of hearing shall be issued within thirty days after such effective date upon complaint of any state certificated air carrier. The hearing may be held after thirty days after service of such notice of hearing upon the person making such change in a rate, fare or schedule.

4.  The Commission may disapprove, after notice and hearing, any change in a rate, fare or schedule between points in this state, . . . if such change would impose an undue economic burden on state certificated carriers operating between the same points.

Fla.Admin.Code, Rule 25.15–50. Over the objections of the Air Transport Association of America that the statute and proposed rule were unconstitutional,[2] the Commission adopted the rule on August 4, 1975.

The impact of the regulatory scheme was virtually immediate. Only two months after the rule's effective date, a state certificated carrier complained that appellant Southern had "changed its schedules so as to compete with the [complaining] carrier." The Commission's independent investigation confirmed that Southern had changed its schedules without complying with the statutory notice requirement, prompting the issuance of a show cause order in the following terms:

> ORDERED . . . that Southern Airways, Inc., show cause in writing within thirty (30) days from the date of this order why it should not be penalized by fine and/or ordered to cease and desist from future violations [of the notice provision].

In addition Southern was ordered to appear before the Commission at a time and place to be fixed by the Commission.

Consistent with its previously expressed position that the regulatory scheme was unconstitutional, Southern did not comply with the order and, joining with the remaining appellants, filed suit in federal district court. The complaint, which asserted federal jurisdiction under 28 U.S.C. §§ 1331, 1337 and invoked 28 U.S.C. §§ 2281, 2284 to require appointment of a three-judge court, alleged that the state's attempts to regulate the schedules of interstate air carriers violated the Supremacy Clause, the Commerce Clause, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[3] Appellants sought injunctive and declaratory relief, and a stay of the execution or operation of the show-cause order.

After denying appellants' request for interim relief,[4] the district court, without rul-

---

**2.** Appellants Eastern, Southern and Delta are members of the Association. The record shows that prior to adoption of Rule 25.15–50, the Association responded as follows to the Commission's request for comments on the proposed rule:

> We respectfully decline to comment upon the proposed Rule because of the Constitutional invalidity of Section 330.53, Fla.Stat., upon which the proposed Rule is based and the language of which is followed substantially by it.

**3.** At the time of suit, appellants had 248 daily flights between points in Florida. Of that number, 237 originated or terminated in states oth-

er than Florida. The remaining 11 flights, which originated or terminated in Florida, all provided interstate or foreign connecting service. The record makes it clear that appellants' constitutional challenge embraces only the attempts to regulate schedules "operating between two points within the state pursuant to federal certification and operated as part of a continuous interstate flight."

**4.** Although the court denied the request for a stay or preliminary injunction, it did so "with leave to the [appellants] to reapply . . . should the . . . commission seek . . . to impose any fines or sanctions against any of the [appellants]." Fla.Stat. § 330.52 (1975) au-

ing upon a plethora of other motions, proceeded to rule upon appellees' motion to dismiss. Citing *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), and *Allegheny Airlines v. Pennsylvania Public Utility Comm'n*, 319 F.Supp. 407 (E.D.Pa.1970), aff'd, 465 F.2d 237 (3d Cir. 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973), the court reasoned:

> [P]laintiffs have failed to make out a case for federal-question jurisdiction. This action seeks merely to obtain for plaintiffs a federal defense to the action pending before the Florida Public Service Commission. The cause of action which defendants threaten to institute will involve only an issue of state law—whether plaintiffs should be required to comply with the PSC's notice provision. That a defense based on federal law will be asserted is immaterial to the jurisdiction of this court.

On the sole basis stated above, the court granted the motion to dismiss.

Appellants subsequently learned that on July 20, 1976, a state certificated carrier, Florida Airlines, Inc., had filed a complaint under the statute. The complaint alleged that appellant Eastern intended to initiate new service between Jacksonville and Tampa, Florida, and requested the Commission to exercise its statutory authority to disapprove the schedule change. This additional action, which was raised in appellants' motion to vacate the dismissal order, did not sway the court. The motion to vacate was denied, and this appeal followed.

Before discussing the substance of the case, we think it necessary to illuminate what is not before us on appeal. We are not here concerned with the merits of appellants' constitutional claims, with the appointment of a three-judge court, or with the availability of injunctive or declaratory relief. The district court did not reach these questions, and we decline to do so on

the record before us. The only issue decided below involved the exercise of subject matter jurisdiction over appellants' claims. It is to that issue, and that issue alone, that we now proceed.

As already mentioned, the decision in *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), lies at the very core of this appeal. The plaintiff there was engaged in the business of importing, processing and transporting picture film and newsreels. These endeavors required plaintiff's carriers to traverse the highways between certain points within the State of Utah. In a suit against the Utah Public Service Commission and its members, it was alleged that defendants were violating the Commerce Clause by threatening and attempting to prevent plaintiff's transportation of materials between Utah cities. Plaintiff sought a declaratory judgment that its Utah activities constituted "interstate commerce" and an injunction restraining defendants from interfering with those activities. Significantly, plaintiff did not challenge the constitutionality of any state statute or administrative ruling, nor did it present any evidence of any past, pending or threatened action against it by defendants. *Id.* at 239–40, 73 S.Ct. 236.

Following a trial, the district court agreed with defendants' contention that plaintiff's Utah business involved only intrastate commerce and therefore dismissed the complaint. The court of appeals, however, concluding in essence that plaintiff's "intrastate transportations [were] nonetheless integral parts of interstate transportation," reversed and remanded for further proceedings. *Wycoff Co. v. Public Service Comm'n of Utah*, 195 F.2d 252 (10th Cir. 1952).[5] The Supreme Court in turn reversed and directed dismissal.

The language in issue here came late in the Court's opinion. After concluding that

thorizes the Commission to impose a fine not to exceed $5,000 or to order a schedule change. Following entry of the court's order, the Commission voluntarily stayed the show-cause proceedings against Southern.

5. Neither the district court nor the court of appeals questioned the existence of subject matter jurisdiction or justiciability.

plaintiff was not entitled to injunctive relief, 344 U.S. at 240–41, 73 S.Ct. 236, and that the suit could not continue as one for declaratory relief because of the "case or controversy" restrictions of Article III, 344 U.S. at 241–48, 73 S.Ct. 236, the Court, *obiter dictum*, observed that:

> In this case, as in many actions *for declaratory judgment*, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against *a cause of action which the declaratory defendant may assert* in the Utah courts. Respondent here has sought to ward off *possible action* of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense *when and if* that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to *an impending or threatened state court action*, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant *threatens* to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

344 U.S. at 248, 73 S.Ct. at 242. (citations omitted) (emphasis added). In relying upon this language to dismiss the present claims, we think it clear that the district court gave it broader effect than was intended.

At the outset we should note that during the 26 years since its decision in *Wycoff*, the Supreme Court has never invoked the rationale quoted above to obtain the result reached by the district court here. Several courts of appeals concededly have relied upon *Wycoff's* dictum in a variety of contexts. *See Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 422 (7th Cir. 1977); *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Comm'n*, 465 F.2d 237, 241 (3d Cir. 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973); *McCorkle v. First Pennsylvania Banking & Trust Co.*, 459 F.2d 243, 250–51 (4th Cir. 1972); *Thiokol Chem. Corp. v. Burlington Indus., Inc.*, 448 F.2d 1328, 1330–31 (3d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972); *Chandler v. O'Bryan*, 445 F.2d 1045, 1055–56 (10th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972); *Product Engineering & Mfg., Inc. v. Barnes*, 424 F.2d 42, 44 (10th Cir. 1970). *But see Rath Packing Co. v. Becker*, 530 F.2d 1295, 1303–1306 (9th Cir. 1975), *aff'd sub nom., Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 343–45 (3d Cir. 1974). However, the only common threat appearing in these cases is the dearth of discussion and analysis. Despite appellees' invitation, we decline to adhere blindly to the cited cases under the circumstances presently before us.

To appreciate the true import of the *Wycoff* "test," it is necessary to consider both its origins and the context in which it was propounded. The *Wycoff* "test" originated, albeit in a somewhat different form, in *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894), where the Court said:

"[A] suggestion of one party, that the other will or may set up a claim under the Constitution . . ., does not make the suit one arising under that Constitution." *Id.* at 464, 14 S.Ct. at 657; *see Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & N. Ry. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The basic principle announced in *Union & Planters* was echoed half a century later in *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), where relief was sought under the Declaratory

Judgment Act, 28 U.S.C. § 2201.[6] The *Skelly* Court, after noting that the Act was not intended to expand federal court jurisdiction, explained:

> To sanction suits for declaratory relief as within the jurisdiction of the District Courts merely because . . . artful pleading anticipates a defense based on federal law would contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act.

339 U.S. at 673, 70 S.Ct. at 880. We think it plain that *Wycoff* is but a logical reiteration of similar concerns in a different setting.

It must be remembered that the *Wycoff* "test" was stated in a case in which the only available remedy was a declaratory judgment. Moreover, there was "no evidence whatsoever of any past, pending or threatened action by the [defendant] touching [the plaintiff's] business in any respect." 344 U.S. at 240, 73 S.Ct. at 238. Given the circumstances, it seems clear that the "test" represents a concern that a plaintiff not be allowed, by asserting a defense to impending or threatened state action, to proceed under the fountainhead of federal-question jurisdiction in a case which otherwise could not be heard in federal court.

The plaintiff in *Wycoff*, however, faced hurdles not present in the case at hand. The *Wycoff* Court, with the benefit of a full trial record, had determined on the merits that no injunction could issue, since there was "no proof of any threatened or probable act of the defendants which might cause the [requisite] irreparable injury."

344 U.S. at 240–41, 73 S.Ct. 239. In the present case the state, through the Commission, already had set in motion the very regulatory processes whose constitutionality was challenged through appellants' suit. As developed by the pleadings and other matters thus far a part of the record, it simply cannot be said that injunctive relief is foreclosed here as it was in *Wycoff*. Appellants' suit, therefore, cannot be characterized as nothing more than an attempt "to ward off possible action of the appellees by seeking a declaratory judgment to the effect that [they] will have a good defense when and if" that action is taken. 344 U.S. at 248, 73 S.Ct. at 242.

Nor can it be doubted that these appellants, whose standing in this matter cannot seriously be questioned,[7] have not presented a true "case or controversy" as required by Article III. That defect undoubtedly played a crucial role in the judicial demise of the *Wycoff* plaintiff's claim. Here, however, the circumstances show that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant [relief]." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), *quoted in Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). *Compare Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *and Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); *with Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Lake Carriers' Ass'n v. MacMullan*,

---

**6.** In a case of *actual controversy within its jurisdiction*, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . .

28 U.S.C. § 2201 (emphasis added).

**7.** *See Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 260–61, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Baker v. Carr*, 369 U.S.

186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961); *Chicago v. Atchinson, T. & S.F. Ry.*, 357 U.S. 77, 83, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958). Even if there were some doubt as to the standing of the appellants against whom the state has not moved, "the issues are sufficiently and adequately presented by [appellants Southern and Eastern] . . ., and nothing is gained or lost by the presence or absence of the [remaining appellants]." *Doe v. Bolton*, 410 U.S. 179, 189, 93 S.Ct. 739, 746, 35 L.Ed.2d 201 (1973).

406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Lamont v. Postmaster General,* 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *and California Public Utilities Comm'n v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958).

▬ That appellants' constitutional claim is or may be a defense to the Commission's actions states a mere truism; it is not, under the circumstances, a limitation upon the power of the district court to entertain the controversy before it. In summary, we hold that where a party seeks injunctive and declaratory relief based upon the unconstitutionality of a state statute, and where there are no other concrete impediments to a proper exercise of federal-question jurisdiction,[8] the mere fact that the constitutional claims might be raised before a state administrative body charged with enforcement of the statute does not alone deprive the court of jurisdiction.[9]

The judgment of the district court is REVERSED and REMANDED.

---

**8.** The statute provides:

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331(a).

The appellants' action, which is founded directly upon the Supremacy Clause, the Commerce Clause, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, undoubtedly "arises under the Constitution" as the Supreme Court has interpreted that phrase. *See Powell v. McCormack,* 395 U.S. 486, 513–14, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Bell v. Hood,* 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Smith v. Kansas City Title Co.,* 255 U.S. 180, 199–200, 41 S.Ct. 243, 65 L.Ed. 577 (1921). *See generally* C. Wright, *Law of Federal Courts* § 17 at 54–59 (2d Ed. 1972).

The complaint in this case alleges the requisite jurisdictional amount. Although this claim was put in issue by appellees' motions to dismiss, the district court made no ruling in this regard. Of course, the law on this question is quite clear. In injunction and declaratory judgment actions, the amount in controversy is not the amount that might be recovered at law, but rather the value of the right to be protected or the extent of the injury to be prevented. *See Western & A.R.R. v. Railroad Comm'n of Georgia,* 261 U.S. 264, 267, 43 S.Ct. 252, 67 L.Ed. 645 (1923); *Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.,* 239 U.S. 121, 125 26, 36 S.Ct. 30, 60 L.Ed. 174 (1915); *City of Milwaukee v. Saxbe,* 546 F.2d 693, 702 (7th Cir. 1976); *Jackson v. American Bar Association,* 538 F.2d 829, 831 (9th Cir. 1976); *cf. Premier Indus. Corp. v. Texas Indus. Fastener Co.,* 450 F.2d 444, 446 (5th Cir. 1971) (same standard applied in context of diversity action to enforce settlement agreement).

In the final analysis it may be that this question need not be resolved, since appellants also alleged jurisdiction under 28 U.S.C. § 1337. That statute confers original jurisdiction, without regard to the amount in controversy, in civil actions "arising under any Act of Congress regulating commerce." In this case the question of whether appellants' action "arises under" the Federal Aviation Act is subject to the same principles applicable in suits under § 1331. *See Felter v. Southern Pacific Co.,* 359 U.S. 326, 329 n. 4, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959); *Peyton v. Railway Express Agency, Inc.,* 316 U.S. 350, 353, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); *Jersey Central Power & Light Co. v. Local 327, IBEW,* 508 F.2d 687, 699 n. 34 (3d Cir. 1975).

**9.** For instances where the Supreme Court, under analogous circumstances, apparently has not considered its *Wycoff* dictum to bar federal jurisdiction, see *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Chicago v. Atchison, T. & S.F. Ry.,* 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); *Railway Mail Ass'n v. Corsi,* 326 U.S. 88, 65 S.Ct. 1483, 89 L.Ed. 2072 (1944); *cf. United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (jurisdiction to consider constitutional challenge to Hatch Act by employee subject to pending administrative sanctions).