HOME DEPOT, INC. and Gaylord's
National Corporation

v.

STATE of LOUISIANA, ex rel. William
J. GUSTE, Jr., Attorney General.

Civ. A. No. 84–1589.

United States District Court,
E.D. Louisiana.

June 8, 1984.

Louis M. Jones, Asst. Atty. Gen., La. Dept. of Justice for State of La., New Orleans, La., for defendant.

Robert E. Barkley, Jr., Francis R. White, III, and Arnd von Waldow, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for Home Depot, Inc. and Gaylord's.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

·This matter came before the Court on the motion of defendant, William J. Guste, Jr., Attorney General of the State of Louisiana (State), to dismiss or in the alternative to stay, and the motion of plaintiffs, Home Depot, Inc. (Home Depot) and Gaylord's National Corporation (Gaylord's) for

preliminary injunction. Following oral argument, the Court denied the State's motion for the reasons set forth below. The motion of plaintiffs for preliminary injunction was taken under submission; considering the memoranda, the record and the law applicable to plaintiff's motion, the Court grants the motion for the following reasons.

## I. COURSE OF PROCEEDINGS.

Home Depot and Gaylord's filed this suit for declaratory judgment and injunctive relief, seeking a declaration that the Louisiana Sunday Closing Law, L.S.A.-R.S. 51:194 and its enforcement by the State are unconstitutional under the Constitutions of the United States and the State of Louisiana, and seeking to enjoin the State from enforcing that statute, and L.S.A. 51:1405 in conjunction therewith, against plaintiffs. In their complaint, plaintiffs allege that the Attorney General has threatened to bring, and has brought, legal actions pursuant to L.S.A.-R.S. 51:194 and 1405 against plaintiffs in state court, seeking preliminary and permanent injunctive relief to prevent plaintiffs from violating those laws. Plaintiffs specifically refer to the consolidated actions entitled "State of Louisiana, ex rel. William J. Guste, Jr., Attorney General vs. Home Depot, Inc., et al.," and "State of Louisiana, ex rel. William J. Guste, Jr., Attorney General vs. Gaylord National Corporation, et al.," which were filed in state court and were subsequently removed to this Court by Home Depot and Gaylord's. By Order and Reasons of this date, we have remanded those consolidated cases back to state court upon the determination that this Court lacked subject matter jurisdiction.[1]

## II. THE STATE'S MOTION TO DISMISS

The State moves to dismiss, or in the alternative to stay, this action on the following grounds: (1) The Court lacks sub-ject matter jurisdiction. (2) Declaratory relief is inappropriate in view of the pending state court proceedings. (3) Injunctive relief is barred by the Anti-Injunction Act. (4) The instant case is barred by the doctrine of abstention. (5) Equitable considerations require dismissal of this action. We address each of the State's contentions individually.

■ The State contends that diversity jurisdiction does not exist in this matter, and we agree for the reasons contained in the Order and Reasons remanding the State's respective actions against Home Depot and Gaylord's. However, we disagree with the State's contention that the Court does not have federal question jurisdiction over the instant case. The Fifth Circuit's decision in the case of *Braniff International, Inc. v. Florida Public Service Commission*, 576 F.2d 1100 (5th Cir. 1978) is dispositive of the issue. That case involved the enactment by the Florida legislature of a statute regulating air carriers operating in the state. Several carriers filed suit in the federal district court, asserting federal jurisdiction under 28 U.S.C. §§ 1331 and 1337, and seeking injunctive and declaratory relief relative to the constitutionality of the state regulatory scheme. The Court considered the question, which was one of first impression in this Circuit, of "the extent to which the Supreme Court's decision in *Public Service Commissioner of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), circumscribes the power of a federal district court to entertain a constitutional challenge to a state statute," 576 F.2d at 1101, concluding as follows:

> "That appellants' constitutional claim is or may be a defense to the Commission's actions states a mere truism; it is not, under the circumstances, a limitation upon the power of the district court to entertain the controversy before it. In

---

1. The issues of the propriety of the removal and the jurisdiction of the federal court were raised by the Court, *sua sponte*, following a hearing on the merits and prior to final judgment. The parties stipulated that should this Court retain jurisdiction of the instant action for declaratory and injunctive relief, then the evidence adduced at that hearing shall serve as the evidence in plaintiff's motion for preliminary injunction in the instant case.

summary, we hold that where a party seeks injunctive and declaratory relief based upon the unconstitutionality of a state statute, and where there are no other concrete impediments to a proper exercise of federal-question jurisdiction, the mere fact that the constitutional claims might be raised before a state administrative body charged with enforcement of the statute does not alone deprive the court of jurisdiction." 576 F.2d at 1106.

Based upon the Fifth Circuit's holding in this regard, we find that the instant case is properly within the Court's federal question jurisdiction.

■ As further grounds for its motion, the State suggests that declaratory relief would be inappropriate in view of pending state court proceedings. It is clear that this case arises out of the same controversy as is at issue in the cases which this Court has remanded to state court for adjudication. However, the mere existence of another adequate remedy does not preclude a judgment for declaratory relief. Rule 57, Fed.R.Civ.P. In an equity suit, the federal district court has discretionary power to stay its hand pending the outcome of a parallel state action. *PPG Industries, Inc. v. Continental Oil Company*, 478 F.2d 674 (5th Cir.1973). The factors to be considered in the exercise of that discretion include (1) that duplicate litigation abrades to some extent the spirit of federal-state comity, (2) that there should be a concern for economy of judicial time and a disinclination to encourage duplication of efforts, (3) the undesirability of imposing on litigants and witnesses the double burdens of two trials, and (4) the undesirability of a race by each party to obtain a decision from the particular court reacting most favorably to its position. *Id.* Summarily, "if a case can be settled most expeditiously in the federal court, that court should exercise its jurisdiction." Wright, Miller & Kane, *Federal Practice*

*and Procedure:* Civil 2d § 2759 at 657–658.

■ We find that under the circumstances of the instant case, this Court clearly should exercise its discretion in adjudicating the matter. The parties were previously before the Court in the parallel proceeding brought by the State with the same issues in controversy. The record in that proceeding was fully developed, and the matter was heard by the Court on the record. Neither party objected to the Court's jurisdiction until the issue was raised by the Court, *sua sponte*. We note that, although we have determined otherwise, both parties, in good faith, were operating under the presumption that the federal court did, in fact, have jurisdiction to hear the matter. Should we dismiss this matter, the parties would in effect be required to begin the litigation all over again in state court. This would be wasteful of the litigants' time and money, and would derogate principles of judicial economy. Thus, we find that this Court should properly exercise its discretion in retaining jurisdiction of this matter. See, *Wong v. Bacon*, 445 F.Supp. 1177 (N.D.Cal.1977), in which the federal court retained jurisdiction under similar circumstances.

■ The State's contention that the instant case is barred by the Anti-Injunction Act, 28 U.S.C. § 2283,[2] is without merit. The plaintiffs are not seeking to enjoin any state court proceeding. Rather, they are seeking a determination by the federal court on their federal constitutional rights, and the issuance of an injunction against the Attorney General based upon such a determination would, of course, be prospective in application, and would not affect pending state court proceedings. The Anti-Injunction Act is inapposite to the instant case.

■ Likewise, none of the principles underlying the various forms of abstention by a federal court mandate the application of

---

**2.** That statute provides as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

that doctrine in this matter. The doctrine of abstention must be viewed in light of the principles as set forth in the case of *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 813–814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976):

"Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.' *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959). '[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.' *Alabama Pub. Serv. Comm'n. v. Southern R. Co.*, 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002, 1015 (1951) (Frankfurter, J., concurring in result)."

See also, *O'Hair v. White*, 675 F.2d 680, 692 (5th Cir.1982).

This is not a case in which the federal constitutional issue before the Court might be mooted or presented in a different posture by a state court determination of state law, and requiring abstention under the *Pullman* doctrine.[3] Nor is it a case in which the exercise of federal review of the question would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern such as to warrant staying the exercise of federal jurisdiction.[4] To the contrary, plaintiffs seek a determination on the constitutionality of state statutes which have been the subject of construction by the state courts and the state attorney general.[5] Federal constitutional issues are always a proper subject for adjudication, and federal courts do not have the right to decline exercise of their jurisdiction simply because the rights asserted may be adjudicated in some other forum. *Evans v. Tubbe*, 657 F.2d 661 (5th Cir.1981). Finally, the *Younger* doctrine[6] is not applicable to this case, since, in view of the circumstances giving rise to this matter as described above, it is clear that federal jurisdiction has not been invoked for the purpose of restraining state criminal proceedings.

■ The State's final contention that equitable considerations require dismissal of the complaint is also without merit. The State argues that "[t]he courts properly decline relief if the declaratory judgment procedure, and the federal forum, is being used for 'procedural fencing' of 'in a race for res judicata.'" Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2759, at 651. We reiterate that both parties litigated the issue before the Court to a hearing on the merits in the good faith belief that federal jurisdiction existed. Under the circumstances, contrary to the State's argument, equitable considerations militate in favor of a determination by this Court.

## III. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Home Depot and Gaylord's are national retail chains having outlets in the State of Louisiana. Home Depot is engaged principally in the retail sale of tools, supplies and accessories for home remodeling and for other applications. Gaylord's is

---

**3.** *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**4.** See, e.g., *Burford & Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

**5.** See, e.g., *Harry's Hardware, Inc. v. Parsons*, 410 So.2d 735 (La.1982).

**6.** *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

a retail department store which sells a wide variety of products.

Plaintiffs seek a preliminary injunction to restrain the Attorney General and his representatives from enforcing the provisions of L.S.A.–R.S. 51:194 and 1405 against them, on the grounds that the Louisiana Sunday Closing Laws are unconstitutional and the enforcement of those laws against them would cause irreparable injury.

The issuance of a preliminary injunction is within the Court's discretion, which must be exercised through the consideration of the four prerequisites for such relief, specifically: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Jackson v. Stinchcomb*, 635 F.2d 462 (5th Cir.1981). We address each of these factors below.

A. *Substantial Likelihood that Plaintiffs Will Prevail on the Merits*

Plaintiffs contend that L.S.A.–R.S. 51:194 impermissibly violates their rights to equal protection and due process, as guaranteed by the Louisiana and Federal Constitutions. Specifically, plaintiffs assert that (1) the statute does not bear a reasonable relationship to a legitimate State interest, (2) the Attorney General is attempting to enforce the statute in a selective and discriminatory manner, and (3) the statute is impermissibly vague. Plaintiffs further contend that the statute violates the Establishment Clause in the State and Federal Constitutions.

L.S.A.–R.S. 51:194 is one of four sections comprising Louisiana's Sunday Closing Law. Section 194(A) sets forth the prohibition of the sale of certain consumer goods on Sunday, as follows:

"On the first day of the week, commonly designated as Sunday, it shall be unlawful for any person, whether at retail, wholesale or by auction, to sell, attempt to sell, offer to sell or engage in the business of selling, or require any employee to sell any clothing or wearing apparel; lumber or building supply materials; furniture; home or business or office furnishings; any household, office or business appliances; new or used automobiles and trucks or parts for and servicing of such motor vehicles in all places of business wherein such motor vehicles are sold. In the case of an emergency, parts and servicing may be sold."

Section 194(B) provides for criminal penalties for violation of the law, specifically, a maximum fine of $100.00 for a first offense and, for subsequent offenses, a maximum fine of $500.00 and/or imprisonment for not more than six months. Injunctive relief to restrain such violations is available under Section 194(C). Exemptions from the operation of the law are contained in Sections 194(D) and (E), and may be summarized as follows: (1) Sales by persons not engaged in the business of selling such an item, LSA–R.S. 51:194 D; (2) Items sold for charitable purposes; (3) Items for funeral or burial purposes, items sold as part of or in conjunction with the sale of real property or mobile homes, drugs, medicines, medical or surgical supplies and appliances, LSA–R.S. 51:194 E(2); (4) The sale of clothing or wearing apparel, new and used furniture, new and used home or business or office furnishings, or any new or used household, office or business appliance in the Vieux Carre section of the City of New Orleans, LSA–R.S. 51:194 E(3); (5) The sale of any merchandise, services, alcoholic beverages or any other sales authorized by the Louisiana World Exposition from May 12, 1984 through and including November 11, 1984 in the City of New Orleans, on the site of the 1984 Louisiana World Exposition, LSA–R.S. 51:194 E(4); and (6) Sales in retail outlets, not exceeding 1,500 square feet of area, of wearing apparel, souvenirs, and jewelry, used or antique furniture, or new and used home or

office accessories, in that certain section of the City of Baton Rouge which is within a historical district or part of a historical district ... LSA–R.S. 51:194 E(5).

The stated purpose of the law is set forth in Section 194(C), as follows: "[T]o promote the health, recreation and welfare of the people of this state and to prevent unfair competition among persons, firms or business establishments..."

We first address plaintiffs' contention that the Louisiana Sunday Closing Law constitutes an establishment of religion, contrary to the State Constitution and the First Amendment to the Federal Constitution. We find that there is not a substantial likelihood that plaintiffs will succeed on the merits of this contention. The case of *McGowan v. State of Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) established that Sunday Closing Laws are not per se unconstitutional as an establishment of religion, and that State legislatures within their general police powers may enact legislation setting aside a uniform day of rest and regulating or restricting sales on that day. There is no evidence before the Court, nor is there any indication, that the State legislature had other than a secular purpose in mind in enacting the statutes in question. It is evident that the legislature, in enacting the statutes, had in mind the purpose stated therein, as quoted above.

■ However, we find that there is a substantial likelihood that plaintiffs will succeed on the merits on their other constitutional arguments. Indeed, based upon the evidence adduced at the hearing and the law applicable to this case, and should the State fail to produce countervailing evidence to plaintiff's claims, the Court is prepared to rule that the statute in question is unconstitutional.

(1) The Product Classifications Bear No Relation To The Purpose of the Statute.

■ In order for a statute regulating economic activity to pass constitutional scrutiny, the statute must bear a reasonable relationship to a legitimate state interest. *McGowan v. State of Maryland,* supra. The Court must determine whether the state's purpose is legitimate and, if so, whether the statute in question is designed to accomplish the State objective in a fair and reasonable way. *Id.* The avowed purpose of the Louisiana Sunday Closing Law is to promote the health, recreation and welfare of the people "by making the first day of the week a day of rest and to prevent unfair competition by those who might choose to work while others rested." *State v. Wiener,* 245 La. 889, 161 So.2d 755, 759 (1964). Plaintiffs do not dispute that the State has a legitimate interest in promoting the health, recreation and welfare of its people or in preventing unfair competition. However, plaintiffs contend that the statute, with its hodgepodge of exceptions, is an unreasonable and discriminatory means of fulfilling that State interest. We agree.

According to the Louisiana Department of Labor statistics released on February 23, 1984, there are, including 54,000 agricultural workers, 1,614,310 persons gainfully employed in Louisiana.[7] There are 235,800 persons employed in the wholesale and retail businesses in Louisiana.[8] Plaintiffs correctly point out that the statute, thus, applies to less than 15% of Louisiana's working population, under the generous assumption that each of these individuals is involved in the sale of prohibited items. This fact in itself would lead strongly to the conclusion that the statute falls woefully short of accomplishing its purpose of establishing a "forced day of

---

**7.** Plaintiffs' Exhibit 1, Louisiana Department of Labor, Release February 23, 1984; Plaintiff's Exhibit 2, Statistical Abstract of Louisiana, Division of Business & Economic Research, University of New Orleans, p. 329.

**8.** This figure excludes those employed in foodstores, which are exempt under the "public or private market" exclusion, *State v. Penniman,* 224 La. 95, 68 So.2d 770 (1953), and eating/drinking emporiums, to which Section 194 is inapplicable.

rest." *Harry's Hardware, Inc. v. Parsons*, 410 So.2d 735, 738 (La.1982). Furthermore, the statute does not prohibit these wholesalers and retailers from working on Sunday or from requiring their employees to work on Sunday, but simply prohibits the sale of enumerated categories of goods. Plaintiffs argue that these workers are still free to engage in, or require their employees to engage in stocking shelves, taking inventory, bookkeeping, holding meetings, preparing advertisements, performing cleaning and maintenance work relative to their places of business, and countless other like activities. Common sense dictates that in our complex society, the percentage of citizens to which the "forced day of rest," purportedly promoted by this statute, applies is far less than 15% of the citizens of Louisiana.[9]

Moreover, the product classifications created by the legislature do not bear a reasonable relationship to the stated objective. There is no discernible connection between the ends to be attained and the means by which they are to be achieved. In this regard the statute in question is similar to an ordinance which was struck down by the Pennsylvania Supreme Court in the case of *County of Spokane v. Valu-Mart, Inc.*, 69 Wash.2d 712, 419 P.2d 993 (1966).[10] The Court's discussion in that case on the absurdity of arbitrary product classifications is equally applicable to the instant case:

> The things forbidden to be sold under this ordinance fall within the most ordinary and mundane categories of commerce, subject to no greater regulation under the police power than groceries, minor appliances, fuel oil, coal, wood, building materials, shrubbery, garden tools, automobile accessories, and a myri-

ad of other articles and devices, most of which are offered by sale by Valu-Mart and which, by definition, are excluded from the ordinance. These latter articles and thousands like them differ in no respect as to their effect upon the public health, safety, morals and welfare than those which cannot be offered for sale on Sunday under the ordinance. 419 P.2d at 997.

As plaintiffs point out, under the Louisiana statute, it is lawful to sell helicopters, airplanes, boats, trailers, mobile homes, houses, buildings, or real estate on Sunday, but the sale of an automobile is a criminal act. Likewise, while an automobile may not be sold on Sunday, it is legal to manufacture, finance, import, export, ship, lease, rent, paint, repair or chauffeur an automobile on Sunday. One's services may be sold on Sunday, but a painter cannot buy paint and a yardsman cannot buy a lawnmower. The statute purports to promote recreation, yet it is unlawful to buy swimsuits, running shoes or gym shorts on Sunday; however, it is lawful to buy a baseball bat. Citizens can, and many do, perform necessary home repairs, renovations and the like on Sunday, but the person who is short one two by four, or several nails, or who has misplaced the paintbrush may be required to postpone the household task until the following Sunday. The anomalies created by the statute indicate its irrelevance to the stated purpose of promoting the people's health, recreation and welfare.

Furthermore, the myriad of exemptions set forth in the statute detract from the stated purpose of promoting the citizens' well-being, and instead of preventing unfair competition, those exemptions, in fact,

**9.** In this regard, we also take note of Plaintiffs' Exhibit 5, Affidavit of Archie Dunn, indicating customary and required work on Sunday by employees in the shipbuilding/ship repair industry, and Plaintiffs' Exhibit 6, Affidavit of Hugh McCloskey, indicating regular Sunday operation of various companies and facilities in the "oil patch." No doubt plaintiffs could have submitted numerous similar affidavits relative to a host of other industries, but for the time constraints of the litigation.

**10.** Other cases in which similar statutory schemes were held unconstitutional include: *Caldors, Inc. v. Bedding Barn, Inc.*, 177 Conn. 304, 417 A.2d 343 (1979); *Nation v. Giant Drug Co.*, 396 P.2d 431 (Wyo.1964); *Skag-Way Dept. Stores, Inc. v. City of Omaha*, 179 Neb. 707, 140 N.W.2d 28 (1966); *Kroger Co. v. O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978); *Twin Fair Distributors Corp. v. Cosgrove*, 85 Misc.2d 901, 380 N.Y.S.2d 933 (1976).

promote such an undesirable result. Two businesses which sell the exact same products and employ the same number of employees may be treated differently under the Louisiana Sunday Closing Law, depending upon the size of the store or its location.[11]

Of particular significance is the State's failure to provide an argument as to the rational relationship between the classifications created by the statutes and the legislative objective. The State simply relies on the general proposition that such laws are not per se unconstitutional, and points to decisions of the Louisiana courts in upholding certain of the statutes. See, e.g., *State v. Wiener*, supra; *Harry's Hardware, Inc. v. Parsons*, supra. While it is true that a statute will not be set aside simply because it creates such classifications, the classification must be relevant to the achievement of the State's objective. As stated above, it is the opinion of the Court that the Louisiana statute fails miserably in achieving its stated purposes. The statute creates arbitrary and unreasonable classifications which are constitutionally impermissible.

### (2) Selective Enforcement of the Law by the Attorney General

Plaintiffs' argument that they are being discriminated against by the Attorney General's selective enforcement of the Sunday Closing Law, in violation of plaintiffs' constitutional rights, is compelling. The affidavits introduced into evidence by plaintiffs lead to the inevitable conclusion that numerous other stores in the area sell prohibited products in violation of the law which the State has attempted to enforce against plaintiffs. Many of those stores openly advertise prohibited items as being available for sale on Sunday. However, it is apparent that hardly a fraction of those stores has been prosecuted for such viola-

tions.[12] Indeed, the State admits that it makes no attempt to enforce the law unless complaints and affidavits supporting the violations are filed with the Attorney General's Office.

A statute which is constitutional on its face may be unconstitutional as applied if there is discrimination in its administration. We agree with the Court's opinion in the similar case of *Playtogs Factory Outlet, Inc. v. County of Orange*, 51 A.D.2d 772, 379 N.Y.S.2d 859, 867 (1976):

"[N]either the agencies enforcing our criminal laws nor the courts should allow themselves to be thus used as cat's-paws by those who seek to utilize Sunday closing laws for their selfish competitive advantage. When prosecutors follow a policy with respect to enforcement of the Sunday closing laws of initiating criminal prosecutions for violations only on the complaints of private individuals, they become the tools of the private interest of the complainants and thus prostitute the State's law enforcement power to the service of selfish private goals."

See also, *Simonetti v. City of Birmingham*, 55 Ala.App. 163, 314 So.2d 83 (1975), cert. denied, 294 Ala. 192, 314 So.2d 99.

### (3) The Louisiana Sunday Closing Law is Void For Vagueness

As a penal statute, the Louisiana Sunday Closing Law is *stricti juris*. *State v. Penniman*, 224 La. 95, 68 So.2d 770 (1953). As such, the crime and its elements must be clearly expressed so that the ordinary person can discern what is lawful and what is unlawful. *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The plaintiffs have produced evidence indicating that not even those whose function it is to enforce the law are certain whether certain items fall within the law's classifica-

---

**11.** Plaintiff's Exhibit 48, Affidavit of Arnold Kirschman sets forth a typical example of this result. Specifically, it indicates that a furniture store located in the French Quarter may sell its merchandise on Sunday, while a competitor located elsewhere is prohibited from doing so.

**12.** In Answers to Interrogatories, Plaintiffs' Exhibit 55, the State admits that the State has instituted litigation against three retailers, in addition to plaintiffs, since January of 1979.

tions of prohibited items. Furthermore, certain of the exemptions depend solely upon the intent of the purchaser. Yet it is impossible for a seller to know whether an item is being sold as a souvenir, or for a charitable purpose, or by reason of an emergency. Plaintiff's position in this regard has substantial merit.

Finally, it is clear that the State's attempt to prosecute plaintiffs for violations of the Louisiana Unfair Trade Practices Act, LSA–RS 51:1405, is based solely upon the alleged violations of the Louisiana Sunday Closing Law. The Court has found no authority either under the Louisiana Unfair Trade Practices Act, or under the comparable federal statute, 15 U.S.C. § 45(a), to support the position that violation of a Sunday Closing Law constitutes such a practice. Thus, if the statute in question is found to be unconstitutional, it cannot provide a basis for prosecution under the Unfair Trade Practices Act.

### B. *Irreparable Injury*

Prior to issuing an injunction, the Court must also find that there is a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted. Generally, when an alleged deprivation of a constitutional right, such as the right to due process or equal protection of the law, is involved, no further showing of irreparable injury is necessary. Wright & Miller, *Federal Practice and Procedure.* Furthermore, the uncontroverted evidence indicates that as a direct result of compliance with the Sunday Closing Laws, Home Depot loses over $100,000.00, and Gaylord's loses approximately $200,000.00, in revenues each Sunday. These are sufficient grounds for a finding that irreparable injury is substantially threatened.

### C. *Balance of Injury to Plaintiff against Harm to Defendant*

The threatened harm to plaintiffs is far more substantial than the harm which would befall the State should it be unable to effectuate its purpose of providing a forced day of rest to its citizens. This is particularly true in view of the strong showing by plaintiffs of likelihood of success on the merits of their claims that their constitutional rights are being violated by the enforcement of the statute in question.

### D. *The Public Interest*

We find that there is no compelling general public interest which would be disserved by enjoining the State from enforcing the Sunday Closing Law against these two plaintiff retailers. In view of the general lack of enforcement of the Sunday Closing Law by the State against other retailers whose violations of the statute have been made known to the Attorney General, it appears that the general public will remain unaffected by our decision herein.

Accordingly, for the foregoing reasons,

IT IS ORDERED that upon each plaintiffs' furnishing a bond, each in the amount of $5,000.00, a preliminary injunction issue herein, restraining and enjoining the Attorney General of the State of Louisiana, William J. Guste, Jr., the members of his staff, his agents, representatives and employees from enforcing or attempting to enforce the provisions of L.S.A.–R.S. 51:194 and 1405 to prohibit, enjoin, punish, fine, or in any way interfere with the sale, attempt to sell or offer to sell any product on a Sunday by Home Depot, Inc. or by Gaylord's National Corporation, the said injunction not to be construed in any way as an attempt to restrain, enjoin, or interfere with any state court proceeding.

IT IS FURTHER ORDERED that the defendant appear before the Court on the 25th day of July, 1984 at 11:30 A.M., to show cause why a permanent injunction should not issue in this matter.